**HARKER'S WHOLESALE MEATS, INC., Plaintiff,**

**v.**

**FRAMARX CORPORATION, Defendant.**

**FRAMARX CORPORATION, Third-Party Plaintiff,**

**v.**

**WEST CARROLLTON PARCHMENT COMPANY, Third-Party Defendant.**

**No. C 77–4042.**

United States District Court, N. D. Iowa, W. D.

Sept. 29, 1978.

J. Michael Dull, Dull Law Firm, LeMars, Iowa, for Harker's Wholesale Meats, Inc.

James W. Redmond, Gleysteen, Harper, Kunze, Eidsmoe & Heidman, Sioux City, Iowa, for Framarx Corp.

Charles R. Wolle, Sioux City, Iowa, for third-party defendant, West Carrollton Parchment Co.

## ORDER

McMANUS, Chief Judge.

This matter is before the court on third-party defendant's resisted motion to quash service filed May 26, 1978. Denied.

Plaintiff, Harker's Wholesale Meats, Inc. (Harker's), an Iowa corporation, brought this action against defendant, Framarx Corporation (Framarx), an Illinois corporation, in Iowa District Court for Plymouth County for damages arising out of a breach of warranty. The matter was removed by Framarx on June 8, 1977.

Harker's is a wholesaler of meat products. Framarx is a merchant and wholesale supplier of waxed and silicone-treated papers designed for insertion between fabricated raw hamburger patties and other meat products to prevent sticking. Harker's ordered a quantity of paper from defendant, which allegedly did not prevent sticking between the individual hamburger patties. Harker's apparently suffered loss of sales, profits, and goodwill due to the alleged failure of the paper to perform according to its ordinary purpose.

Framarx denied any breach of warranty regarding the product. Further, it impleaded West Carrollton Parchment Company (Carrollton), an Ohio corporation, for indemnity and contribution alleging that any breach of warranty by Framarx was due to Carrollton's negligence and breach of warranty, or to a defect in the paper as manufactured by Carrollton.

Carrollton now moves to quash service of process, effected by Framarx pursuant to Iowa Rules of Civil Procedure 56.1 and 56.2 by having the United States Marshal personally serve Charles Huber, Vice President for Carrollton, at Carrollton's corporate offices in Ohio. Carrollton contends that the Iowa Rules are unavailable to Framarx, a non-resident of Iowa, and that exercise of the court's jurisdiction over Carrollton by means of such rules would be violative of Constitutional Due Process because Carrollton lacks the requisite minimum contacts with the State of Iowa.[1]

### Service Under the Iowa R. C. P.

Federal Rules of Civil Procedure (FRCP) 4(e) and 4(f) provide that service of process may properly be effected outside the territorial limits of the state in which the district court is held in any manner provided for by a statute *or rule of court* of the forum state. Unlike the more restrictive provisions for service contained in its Long-Arm Statute, Iowa's Rules of Civil Procedure (IRCP) permit personal service of process outside the state on an officer of a "corporation . . . [having] the necessary minimum contact with the state of Iowa." IRCP 56.2 *incorporating* IRCP 56.1 (1977). No requirement of residency by the serving party is included. *Id.* The Iowa rules, moreover, have been interpreted as intending the expansion of out-of-state service to the full limits permitted by Constitutional Due Process. *See Southern Iowa Mfg. Co. v. Whittaker Corp.*, 404 F.Supp. 630, 634 n.2 (S.D.Iowa 1975). The court decides, therefore, that in an impleader action such as this one extraterritorial and personal service pursuant to IRCP 56.2 and 56.1 is available to third-party plaintiff Fra-

---

1. In a previous order, filed April 21, 1978, the court quashed similar service of process by Framarx on Carrollton. There, however, service was effected by means of the Iowa "Long-Arm" Statute, Iowa Code § 617.3 (1977), which requires the performance in Iowa of a contract with an Iowa resident or the commission of a tort in Iowa against an Iowa resident. In quashing that service of process the court decided the threshold question of the applicability of the Long-Arm Statute, holding that since Framarx was not an Iowa corporation the Iowa Long-Arm Statute, strictly construed, was not available to it for service of process purposes. The court, therefore, did not reach the constitutional issue of sufficient minimum contacts. Order, *Harker's Wholesale Meats, Inc. v. Framarx Corp.*, No. 77–4042 (N.D.Iowa, April 21, 1978).

marx even though Framarx is not an Iowa corporation, such service being clearly envisioned by FRCP 4(e) and 4(f).

### Sufficient Minimum Contact

■ Having decided that IRCP 56.2 and 56.1 are available in this type of case, the court must also consider whether Carrollton has had the sufficient minimum contact with the state of Iowa to satisfy Due Process. *See International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); IRCP 56.2 (1977). The United States Court of Appeals for the Eighth Circuit has articulated some factors to be considered in determining whether personal jurisdiction can be exercised under the Supreme Court's *International Shoe* Due-Process guidelines:

> "(1) The nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) *the relation of the cause of action to the contacts* ; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." (Emphasis added). *Caesar's World, Inc. v. Spencer Foods, Inc.*, 498 F.2d 1176, 1180 (8th Cir. 1974).

These factors, however, do not establish a mathematical or mechanical formula, but rather provide a general guide for the flexible application of the abstract principles delineated by the United States Supreme Court in *International Shoe. Id.* The proper inquiry in this type of case—involving an impleader action in federal district court—should begin by primarily considering the relatedness of Carrollton's "Iowa" contacts with the pending cause of action. *See Southern Iowa Mfg. Co. v. Whittaker Corp., supra* at 632. The commercial contacts existing between Carrollton and Harker's are concededly less direct than those existing between Carrollton and Framarx. For purposes of deciding the Due Process issue on this motion to quash, however, the "Carrollton-Harker" contacts are not the singularly or exclusively controlling ones. *See id.* In short, the court should principally evaluate the links existing between and among all the parties with the product which has brought them all together in this court and with the litigation itself. *See id.*

■ Whether the essential legal basis for this lawsuit lies in contract or tort theory, it is apparent that Harker's as well as Framarx's claims result most directly from an alleged defect in a product that has found its commercial way into Iowa. The manufacturer of that product is Carrollton and it was Carrollton which introduced it into the stream of commerce. It is reasonable to assume that Carrollton could foresee that its product would find its way into Iowa, especially since Carrollton sold the product to Framarx, a corporate wholesaler of paper products located in Illinois, a state sharing territorial borders with Iowa. Moreover, Framarx alleges in its third-party complaint that Carrollton knew of the particular purpose for which such papers would be used by Framarx's Iowa customers, and knew specifically to what use they would be put by Harker's. For purposes of ruling on this motion such allegations must be accepted as true. *See Hutson v. Fehr Brothers, Inc.*, 584 F.2d 833, at 835 (8th Cir. 1978). This sort of knowledge or reasonable foreseeability, coupled with the fact that the product did indeed find its way into Iowa and with resultant ill effect, by itself would probably be sufficient to satisfy Due Process requirements, *see Edmundson v. Miley Trailer Co.*, 211 N.W.2d 269, 272 (Iowa 1973); *Andersen v. National Presto Industries, Inc.*, 257 Iowa 911, 135 N.W.2d 639, 642–43 (1965). When products placed in the stream of commerce reach a foreign state the manufacturer of the product would have the protection of that state's laws and it is not unfair, therefore, to require the manufacturer to assume the burdens of those laws as well as their benefits. *Andersen v. National Presto Industries, Inc., supra* at 643; *cf. International Shoe Co. v. Washington, supra*, 326 U.S. at 319, 66 S.Ct. 154.

■ But in this case there exists an additional factor to be considered in deciding the minimum contacts question. It is admitted by Carrollton that Mr. Charles Hu-

ber, Vice President for Carrollton, visited Harker's Iowa plant when problems with the paper arose. His purpose was to advise Harker's, at Framarx's request, about the problem. That contact with the state of Iowa by one of Carrollton's corporate officers is directly related to Harker's claim against Framarx and Framarx's third-party claim against Carrollton. In light of this additional related contact it seems even more reasonable and fair to require Carroll-ton to become involved in this litigation. The court decides that requiring Carrollton to defend in this jurisdiction as an impleaded third-party comports with the reasonableness, fair-play, and substantial-justice standards expressed by the Supreme Court in *International Shoe*.[2]

It is therefore

ORDERED

Denied.

---

**2.** This result is also consistent with the purpose and policy underlying impleader practice in federal courts; that is, avoiding duplication of litigation and doing away with "the serious handicap to a defendant of a time difference between a judgment against [it], and a judgment in [its] favor against the third-party defendant." 3 Moore's Federal Practice ¶ 14.04 at 14–189 (2d ed. 1974).