Angela Marie **LARSEN**, Appellant,

v.

Clarence Leo **SCHOLL**, Appellee.

No. 63979.

Supreme Court of Iowa.

Sept. 17, 1980.

Thomas J. Miller, Atty. Gen., Robert E. Keith, Asst. Atty. Gen., and John Waters, Carroll, Child Support Enforcement Attorney, Audubon County, for appellant.

William D. Groteluschen, Audubon, for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, ALLBEE, McGIVERIN, and LARSON, JJ.

REYNOLDSON, Chief Justice.

In this Iowa paternity action we must decide whether the due process clause of the United States Constitution permits in personam jurisdiction over defendant, a nonresident putative father alleged to have had sexual intercourse with plaintiff, an Iowa resident, "at various places within the State of Iowa at various times during the period from October 1, 1977, to November 30, 1977, as a result of which the Plaintiff became pregnant." Trial court sustained defendant's special appearance, which alleged defendant had not had "the necessary minimum contact with the State of Iowa to be subject to the jurisdiction of the courts of the State of Iowa." We reverse and remand.

Plaintiff's petition was filed March 22, 1979, in Audubon County, Iowa. She additionally alleged she had no sexual intercourse with any other person during the stated interval, and that defendant was the father of the child, Amberley Marie Larsen, born July 16, 1978, in Audubon, Iowa. Plaintiff prayed defendant be declared the child's father and be ordered to support the child.

Defendant was served personally in Cass County, Nebraska, where he resided. His special appearance challenged the court's jurisdiction on the ground he was a nonresident, not found, served or doing business in Iowa.

Plaintiff's resistance to the special appearance stated defendant had been served "pursuant to Rule 56.2 and in accordance with Rule 56.1 of the Iowa Rules of Civil Procedure." She asserted that defendant had the necessary "minimum contacts" with the State to satisfy these rules, because the sexual intercourse had occurred in Iowa and the child was receiving public assistance from the State.

Defendant then amended his special appearance to deny he had the requisite contact with Iowa to be subject to service pursuant to rule 56.2. The subsequent hearing apparently consisted of counsel's legal arguments and was unreported. July 2, 1979, trial court ruled:

> The court finds that it does not have jurisdiction herein. Special Appearance of Defendant is Sustained. Case Dismissed at Plaintiff's Costs.

Plaintiff timely appealed.

## I. Applicable legal principles.

Our scope of review in an appeal from ruling on a special appearance has been discussed in several recent decisions. We accept the allegations of the petition as true. Plaintiff has the burden to sustain the requisite jurisdiction, but when a prima facie case is established, defendant has the burden to produce evidence to rebut or overcome it. The trial court findings in this special proceeding have the force and effect of a jury verdict. However, we are not bound by trial court's conclusions of law or by its application of legal principles. *Berkley International Co. v. Devine*, 289 N.W.2d 600, 602 (Iowa 1980); *Kagin's Numismatic Auctions, Inc. v. Criswell*, 284 N.W.2d 224, 225 (Iowa 1979); *DeCook v. Environmental Security Corp.*, 258 N.W.2d 721, 726 (Iowa 1977). In this case the assumed facts are not in dispute. Our determination turns on the application of legal principles.

In appeals of this kind the legal analysis ordinarily involves a two-step examination of (1) whether a statute or rule exists authorizing exercise of jurisdiction and (2) whether such exercise of jurisdiction would offend the due process principles embodied in the United States Constitution. *Berkley*, 289 N.W.2d at 602; *Kagin's*, 284 N.W.2d at 227–28; *Howells v. McKibben*, 281 N.W.2d 154, 155–56 (Minn.1979); *State ex rel. Larimore v. Snyder*, 206 Neb. 64, 66, 291 N.W.2d 241, 243 (1980).

■ In the second–step due process inquiry we examine whether the assertion of in personam jurisdiction over the nonresident defendant satisfies the requirement of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). The "minimum contacts" test of *International Shoe*

is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present. *Hanson v. Denckla*, 357 U.S. 235, 246, 2 L.Ed.2d 1283, 1293, 78 S.Ct. 1228, 1235 (1958). We recognize that this determination is one in which few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable." *Estin v. Estin*, 334 U.S. 541, 545, 92 L.Ed. 1561, 1566, 68 S.Ct. 1213, 1216 (1948).

*Kulko v. California Superior Court*, 436 U.S. 84, 92, 98 S.Ct. 1690, 1697, 56 L.Ed.2d 132, 141 (1978).

■ We apply the above standard in light of five factors the Court of Appeals for the Eighth Circuit has distilled from adjudicated cases, the first three being most important:

(1) the quantity of the contacts;

(2) the nature and quality of the contacts;

(3) the source and connection of the cause of action with those contacts;

(4) the interest of the forum state; and

(5) the convenience of the parties.

See *Caesar's World, Inc. v. Spencer Foods, Inc.*, 498 F.2d 1176, 1180 (8th Cir. 1974); *Berkley*, 289 N.W.2d at 603; *Kagin's*, 284 N.W.2d at 228–29; *Douglas Machine & Engineering Co. v. Hyflow Blanking Press Corp.*, 229 N.W.2d 784, 789 (Iowa 1975).

We now turn our attention to the first step, whether an Iowa statute or rule authorizes the jurisdiction asserted.

II. *Rule 56.2, Iowa Rules of Civil Procedure.*

From the outset of this litigation plaintiff has claimed Iowa has in personam jurisdiction over defendant under the provisions of rule 56.2, which provides in relevant part:

Every . . . individual . . . that shall have the necessary minimum contact with the state of Iowa shall be subject to the jurisdiction of the courts of this state, and the courts of this state shall hold such . . . individual . . . amenable to suit in Iowa in every case not contrary to the provisions of the constitution of the United States.

Service may be made on any such . . . individual . . . as provided in rule 56.1 within or without the state. . . .

■ It is apparent the above rule, unlike Iowa's older "long–arm" statute, section 617.3, The Code ("Foreign corporations or nonresidents contracting or committing torts in Iowa"), expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution. *See Harker's Wholesale Meats, Inc. v. Framarx Corp.*, 79 F.R.D. 715, 716 (N.D.Iowa 1978); *Southern Iowa Manufacturing Co. v. Whittaker Corp.*, 404 F.Supp. 630, 634 n.2 (S.D. Iowa 1975). *See also Church of Scientology of California v. Adams*, 584 F.2d 893, 896 (9th Cir. 1978) (noting a similar California statute collapses the usual two–step analysis into a single search for the outer limits of what due process permits).

The foreign decisions cited by both parties, which turn on the question whether sexual intercourse constitutes tortious conduct under the usual, more restrictive long–arm statute, are inapposite here by virtue of the broad language of our rule 56.2. For example, courts in Colorado, Kansas, Nebraska, New York and Oregon have held that consensual sexual intercourse is not tortious conduct, and consequently have denied personal jurisdiction over a nonresident defendant in a paternity suit because no *statute* authorized such jurisdiction. *See A.R.B. v. G.L.P.*, 180 Colo. 439, 441–43, 507 P.2d 468, 469 (1973); *State ex rel. Carrington v. Schutts*, 217 Kan. 175, 177–80, 535 P.2d 982, 985–87 (1975); *State ex rel. Larimore v. Snyder*, 206 Neb. at 68–69, 291

N.W.2d at 244–45; *Anonymous v. Anonymous*, 49 Misc.2d 675, 676–77, 268 N.Y.S.2d 710, 711–12 (Fam.Ct.1966); *State ex rel. McKenna v. Bennett*, 28 Or.App. 155, 158–60, 558 P.2d 1281, 1283–84 (1977).

Other states nonetheless have hurdled the "tortious conduct" barrier of their more restrictive long–arm statutes to find jurisdiction over such nonresident defendants, at least when the facts disclose a resultant child and the concomitant duty of support. *See, e. g., Poindexter v. Willis*, 87 Ill.App.2d 213, 217–18, 231 N.E.2d 1, 3 (1967); *Neill v. Ridner*, 153 Ind.App. 149, 152, 286 N.E.2d 427, 429 (1972); *Howells v. McKibben*, 281 N.W.2d at 156–57; *State ex rel. Nelson v. Nelson*, 298 Minn. 438, 439–42, 216 N.W.2d 140, 141–43 (1974); *Poindexter v. Willis*, 23 Ohio Misc. 199, 207–10, 256 N.E.2d 254, 259–61 (C. P. Montgomery County 1970) (according full faith and credit to Illinois decision of same name). *See generally* Annot., 76 A.L.R.3d 708 (1977); Levy, *Asserting Jurisdiction Over Nonresident Putative Fathers in Paternity Actions*, 45 U.Cin.L.Rev. 207 (1976).

All of these decisions turned on the first step of the two–step analysis: whether the jurisdiction sought to be asserted was permissible under the language of the state's long–arm statute or rule. Because jurisdiction under our rule 56.2 is coextensive with the outer limitations of constitutional due process, the first step of our two–step analysis telescopes into the second. *See Church of Scientology*, 584 F.2d at 896.

### III. *Constitutional due process.*

We thus turn to an evaluation of the jurisdiction sought to be asserted over this defendant in the context of constitutional due process, keeping before us the five factors noted in division I.

Preliminarily, we note this issue has arisen in other jurisdictions under broad statutes or rules similar to Iowa's rule 56.2. *See, e. g., Bebeau v. Berger*, 22 Ariz.App. 522, 523, 529 P.2d 234, 235 (1974) (giving full faith and credit to Wisconsin adjudication); *Backora v. Balkin*, 14 Ariz.App. 569, 571, 485 P.2d 292, 294 (1971) (statute provid-

ed for jurisdiction where person "caused an event to occur in this state out of which the claim which is the subject of the complaint arose"); *Bartlett v. Superior Court*, 86 Cal. App.3d 72, 76–77, 150 Cal.Rptr. 25, 28 (1978) (implying California might exercise jurisdiction when facts would justify finding the state a "fair forum," see Cal.Civ.Proc.Code § 410.10 (West)); *Barnhart v. Madvig*, 526 S.W.2d 106, 108–09 (Tenn.1975) (specific rejection of paternity action as action in tort, and discussion of minimum contacts under statute permitting assertion of jurisdiction on *any* basis not inconsistent with the state or federal constitutions); *Gentry v. Davis*, 512 S.W.2d 4, 6 (Tenn.1974) (assuming without deciding that jurisdiction, which was held proper, was founded either on the act being a tort or on statute discussed in *Barnhart*).

An overview of all the above paternity case decisions from other states discloses the majority support the concept of jurisdiction over the nonresident putative father, either on the basis that the conduct was tortious or that the statute or rule was broad enough to include the in–state conduct as a constitutionally adequate contact. Only in *Bartlett* (California) and *Barnhart* (Tennessee) did the courts find defendant had insufficient minimum contacts with the forum state to permit constitutional assertion of jurisdiction. *See Bartlett*, 86 Cal. App.3d at 78, 150 Cal.Rptr. at 28; *Barnhart*, 526 S.W.2d at 109. In both cases, the opinions disclose that sexual intercourse and conception had occurred *outside* the jurisdiction, with the mother subsequently entering the forum state. *See Bartlett*, 86 Cal.App.3d at 74, 150 Cal.Rptr. at 26; *Barnhart*, 526 S.W.2d at 108. Those decisions could be categorized as falling under the rule enunciated in *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* at 253, 78 S.Ct. at 1239–40, 2 L.Ed.2d at 1298; *see Barnhart*, 526 S.W.2d at 108–09.

■ Narrowing our focus to the five factors, we first note that the materials before us, which we accept as true, show this defendant came to Iowa "at various times" during a two–month period and engaged in sexual intercourse with the plaintiff, resulting in her pregnancy. Thus several contacts in Iowa were involved. The nature and quality of these contacts, involving the siring of a child, are obvious, as is the nexus between these acts of intercourse and this action to establish paternity and provide support for the resulting child. *See Church of Scientology,* 584 F.2d at 896–97.

Iowa has an obvious interest in establishing the paternity of an illegitimate child born in Iowa to an Iowa resident. In sections 675.7–.27, The Code, a statutory procedure is provided for determining paternity and compelling support. The parents' obligation to support the illegitimate child is fixed by statute (§ 675.1, The Code), as is the right of the department of social welfare or other persons providing support to seek reimbursement from the parents. *See Engelson v. Mallea,* 180 N.W.2d 127, 132–33 (Iowa 1970); §§ 675.5, .37–.38, The Code. The State's concern with fixing parentage of illegitimate infants who are or may become public charges is so intense that Iowa requires the county attorney to prosecute the action. § 675.19, The Code.

Turning to the fifth factor, we briefly consider the convenience of the parties. The action was filed in a western Iowa county. Defendant lives in a county abutting Nebraska's eastern border. It would not be a major inconvenience for defendant to appear for trial in the Iowa court. Potential witnesses who could describe the relationship of plaintiff and defendant are apt to be Iowa residents. *See Howells,* 281 N.W.2d at 158. Plaintiff has a small child and apparently is without adequate funds to provide for her daughter's support. Plaintiff additionally raises the possibility that a paternity action may not be enforced vigorously in the county of the putative father's residence. *See Bartlett,* 86 Cal. App.3d at 74, 150 Cal.Rptr. at 26; *Nelson,* 216 N.W.2d at 143.

■ We are not convinced by defendant's argument that we should affirm in this case because chapter 252A, The Code (Uniform Support of Dependents Law) provides a procedure to determine custody in which neither party is required to leave his or her home state. Section 252A.8 states:

This chapter shall be construed to furnish an additional or alternative civil remedy and shall in no way affect or impair any other remedy, civil or criminal, provided in any other statute and available to the petitioner in relation to the same subject matter.

Similarly, the chapter 675 proceeding instituted in this case is not exclusive; section 675.7 provides such an action "shall not be exclusive of other proceedings that may be available on principles of law and equity." *See Engelson,* 180 N.W.2d at 132. Long–distance resolution of paternity issues without the aid of direct confrontation has obvious potential weaknesses.

Finally, accepting as true the detailed allegations of plaintiff's petition, we discern nothing unfair or unreasonable in requiring defendant to respond to the Iowa litigation. Unlike the situations in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980), and *Kulko,* 436 U.S. at 96–101, 98 S.Ct. at 1699–1702, 56 L.Ed.2d at 143–47, a direct, foreseeable cause and effect relationship exists between defendant's Iowa contacts involving sexual intercourse and the resulting child born in Iowa to an Iowa mother. *See McKenna,* 558 P.2d at 1283 ("The birth of the child in Oregon for whom the parent would have a legal obligation of support is a foreseeable consequence of an act of sexual intercourse in Oregon."). He should reasonably anticipate being haled into an Iowa court. *See World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501; *Berkley,* 289 N.W.2d at 605; *DeCook,* 258 N.W.2d at 728–29. We hold maintenance of this action in Iowa does not offend "traditional notions of fair play and substantial justice." *See International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158, 90 L.Ed.2d at 102, quoting

*Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278, 283 (1940).

We reverse trial court's ruling sustaining defendant's special appearance and remand for further proceedings in conformance with this opinion.

REVERSED AND REMANDED.