Steven M. EGLI, Petitioner–Appellant,

v.

Margaret E. EGLI, a/k/a Margaret A. Baker, n/k/a Margaret A. Baker Mellberg, Respondent–Appellee.

No. 88–1113.

Court of Appeals of Iowa.

Aug. 23, 1989.

Dale E. Goeke of Hagemann, Goeke & Egli, Waverly, for petitioner-appellant.

L.J. Cohrt of Swisher & Cohrt, Waterloo, for respondent-appellee.

Considered by DONIELSON, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

Petitioner, Steven Egli, appeals the decision of the Iowa District Court sustaining respondent's, Margaret Egli, motion to dismiss. He argues the district court erred in finding that no personal jurisdiction exists over Margaret, who lives in Rhode Island.

The parties were married in Iowa in 1967. Their one child, Nathan, was born in Iowa in November 1967. The parties lived in Iowa until 1973. In that year they moved to New York.

The parties' marriage was dissolved by a New York decree in 1976. The 1976 decree placed the child in Margaret's custody and directed Steven to pay child support of $60 per week.

Some time after the 1976 dissolution, Margaret and the child moved to Rhode Island, while Steven remained in New York. In 1979 Margaret instituted support proceedings in New York which resulted in a 1979 New York order once again directing Steven to pay $60 per week in child support.

In 1980 Steven returned to Iowa, where he has since resided. In 1984 the parties' child came to Iowa to live with Steven; the child has lived in Iowa ever since. Margaret continues to live in Rhode Island.

In 1987 Steven received a billing statement from a Support Collection Unit in New York; the statement sought to recover alleged arrearages under the 1979 support order. Steven contacted the Support Collection Unit and was advised that the 1979 support order could be terminated if Margaret would notify the Support Collection Unit that there was no longer a need for support. Steven then asked Margaret to so notify the Support Collection Unit. Margaret refused to do this, and instead indicated that she planned to try to collect support arrearages.

Steven thereupon filed the present proceeding in the Iowa district court, seeking to vacate the 1979 order of the Family Court of New York for child support and to have shown as satisfied previously-existing but unpaid support. Steven asked further that the 1979 support order be vacated as of June 1, 1984, the date when the child began to live with Steven. Steven also asked that the original 1976 New York dissolution decree be modified to award him sole custody of the child effective June 1, 1984, to terminate his support obligation effective June 1, 1984, and to impose a support obligation on Margaret from June 1, 1984, until the date of the child's eighteenth birthday. Margaret was served personally with a copy of the petition at her residence in Middletown, Rhode Island.

Margaret filed a motion to dismiss Steven's proceeding for lack of personal jurisdiction over her. The district court sus-

tained this motion, holding that Iowa courts had no personal jurisdiction over Margaret. In passing upon a question of personal jurisdiction, we accept the allegations of the petition as true. *Larsen v. Scholl*, 296 N.W.2d 785, 787 (Iowa 1980). But Steven has the burden to sustain the requisite jurisdiction; and when a prima facie case is established, Margaret, as the defendant, has the burden to produce evidence to rebut or overcome it. *Id.* While the trial court's findings have the force and effect of a jury verdict, we are not bound by its application of legal principles or conclusions of law. *Id.*

Steven contends the Iowa District Court has personal jurisdiction over Margaret. In order to make this determination, a two-step analysis is required. *Id.* We initially inquire as to whether a statute or rule of court authorizes an exercise of jurisdiction in this particular instance. *Id.* If this criteria is fulfilled, we then must determine whether this exercise of personal jurisdiction offends principles of due process. *Id.*

Steven maintains that there exists the requisite minimum contacts between Margaret and the State of Iowa in order to confer personal jurisdiction pursuant to Iowa Rule of Civil Procedure 56.2. Analysis of this question also entails analysis of the due process issue.

In a case similar to the one before us now, the U.S. Supreme Court stated:

> [T]he constitutional standard for determining whether the State may enter a binding judgment against appellant here is ... [whether] a defendant "ha[s] certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"
> .... While the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice are, of course, to be considered,

... an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.....
> Like any standard that requires a determination of "reasonableness," the "minimum contacts" test ... is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating, circumstances" are present. ....
> We recognize that this determination is one in which few answers will be written "in black and white. The greys are dominant and even among them the shades are innumerable."

*Kulko v. California Superior Court*, 436 U.S. 84, 92, 436 U.S. 84, 98 S.Ct. 1690, 1696–97, 56 L.Ed.2d 132, 141 (1978).[1]

The court stated further in *Kulko* that we must look to "some act by which defendant purposefully avails ... [her]self of the privilege of conducting activities within the forum state." *Kulko*, 436 U.S. at 94, 98 S.Ct. at 1698, 56 L.Ed.2d at 142 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958)).

We apply the above standard in light of five factors, the first three being the most important:

> (1) the quantity of the contacts;
> (2) the nature and quality of the contacts;
> (3) the source and connection of the cause of action with those contacts;
> (4) the interest of the forum state; and
> (5) the convenience of the parties.

*Larsen*, 296 N.W.2d at 788.

Steven and Margaret were married in Iowa on April 21, 1967. Nathan was born on November 15, 1967. The parties moved to New York in 1973. Divorce proceedings were initiated in New York in 1976. The parties were divorced that same year.

---

**1.** In *Kulko,* the U.S. Supreme court was called upon to determine whether a California court had personal jurisdiction over a nonresident, nondomiciliary parent of a minor child domiciled within California. *Id.* 436 U.S. at 86, 98 S.Ct. at 1694, 56 L.Ed.2d at 137. The court

found the contact with the state (a three-day layover en route to Korea, at which time the parties were married) was too tenuous to fulfill constitutional requirements. *Id.* at 86–87, 98 S.Ct. at 1694, 56 L.Ed.2d at 137–38.

Margaret obtained custody of the child and child support of $60 a week. Margaret and the child moved to Rhode Island. In 1979 Margaret initiated a uniform support proceeding in New York, resulting in an order requiring Steven to pay $60 a week child support. Steven moved to Iowa in 1980, and Nathan joined him in June of 1984. Margaret yet resides in Rhode Island and has had no contact in Iowa since 1973.

As the court noted in the *Kulko* case: [B]asic considerations of fairness point decisively in favor of appellant's state of domicile as the proper forum for adjudication of this case.... [A]ppellant did no more than acquiesce in the stated preference of one of his children to live with her mother in California. This single act is surely not one that a reasonable parent would expect to result in the substantial financial burden and personal strain of litigating a child-support suit in a forum 3,000 miles away, and we therefore see no basis on which it can be said that appellant could reasonably have anticipated being "haled before a (California) court," *Shaffer v. Heitner*, 433 U.S. [186] at 216, 53 L.Ed.2d 683, 97 S.Ct. 2569 [2586]. To make jurisdiction in a case such as this turn on whether appellant bought his daughter her ticket or instead unsuccessfully sought to prevent her departure would impose an unreasonable burden on family relations, and one wholly unjustified by the "quality and nature" of appellant's activities in or relating to the State of California.

*Kulko*, 436 U.S. at 97–98, 98 S.Ct. at 1699–1700, 56 L.Ed.2d at 145.

When we evaluate the jurisdiction sought over Margaret in the context of constitutional due process, keeping before us the five factors set forth above, we find there are insufficient minimum contacts to confer personal jurisdiction on the district court pursuant to Iowa Rule of Civil Procedure 56.2.

Steven also argues that jurisdiction exists pursuant to Iowa Code section 598A.3(1)(b). This chapter concerns adoption of the Uniform Child Custody Jurisdiction Act. The custody of Nathan is no longer in issue.

Steven also asserts jurisdiction exists pursuant to Iowa Code section 252B.12, or, in the alternative, Iowa Rule of Civil Procedure 56.2. Iowa Code section 252B.12 does not confer personal jurisdiction over the defendant in this case. This is not "an action brought to establish paternity or to establish or enforce a child support obligation." Iowa Code § 252B.12. Rather, it is an action (1) to vacate the New York order of June 5, 1979, (2) to declare unenforceable accrued support payment on the grounds of waiver and laches, (3) to receive credit for support he gave Nathan against the court-ordered support, and (4) modification of the New York decree vesting custody of Nathan in him and child support from the date he obtained physical custody (June 1, 1984). Nathan at the time of the filing of the petition was twenty years of age. He does not qualify as a "child" as that term is defined in section 252B.1(1).

For the above reasons, we affirm the decision of the district court sustaining Margaret's motion to dismiss.

AFFIRMED.