James David HODGES, Appellee,

v.

Kirsten D. HODGES, Appellant.

No. 96–1405.

Supreme Court of Iowa.

Dec. 24, 1997.

Roger A. Lathrop and Jean Dickson Feeney of Betty, Neuman & McMahon, L.L.P., Davenport, for appellant.

Jay T. Schweitzer and Timothy K. Wink of Schweitzer & Wink, Columbus Junction, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, LAVORATO, and SNELL, JJ.

CARTER, Justice.

Kirsten D. Hodges, former wife of plaintiff, James David Hodges, appeals from an order denying her challenge to the in personam jurisdiction of the Iowa court in James's action seeking recovery of damages from her on various theories. All of these theories of recovery are based on alleged representations concerning the change in the terms of the Illinois decree dissolving the parties' marriage. After reviewing the record and considering the arguments presented, we affirm the order of the district court.

James and Kirsten Hodges were married in Illinois in 1980. They lived together in Iowa from 1980 to 1984. Their daughter, Stephanie, was born in Iowa on August 17, 1984. Shortly thereafter, the family moved to Illinois. In 1988 their marriage was dissolved by an Illinois court. Kirsten received primary physical care of Stephanie. Shortly after the decree, James moved back to Iowa while Kirsten and Stephanie continued to reside in Illinois.

In 1993 Kirsten desired to move with Stephanie from Illinois to Maryland. It is James's contention that Kirsten attempted, through counsel, to negotiate an agreement with him approving this change of residence. James contends that an agreement followed encompassing his approval of the move to Maryland in consideration of Kirsten's waiver of past due child support payments on his part and a lowering of his future child support payments. Thereafter, Kirsten and Stephanie moved to Maryland.

Based on Kirsten's alleged failure to follow through with the alleged agreement to forgive James's past due child support payments and to lower his future child support payments, James filed this action at law against her in Louisa County, Iowa, alleging claims of (1) breach of contract, (2) negligent and fraudulent misrepresentations, (3) intentional infliction of emotional distress, and (4) deprivation of constitutionally protected rights. James alleged, among other things, that various governmental agencies have taken action against him for past due child support payments as a result of Kirsten's failure to abide the agreement between the parties and that he has suffered financial loss and substantial emotional distress.

James attempted to secure personal jurisdiction over Kirsten by personal service of original notice upon her in the State of Maryland, pursuant to Iowa Rule of Civil Procedure 56.2 (authorizing personal service within or without the state). Kirsten filed a motion to dismiss the action for lack of personal jurisdiction. She contended that her contact with the State of Iowa was sufficiently minimal that the exercise of personal jurisdiction over her would be violative of due process. In resisting this motion, James filed the affidavit of his attorney affirmatively stating that the representations on which the action is based were made to James in the State of Iowa both by telephone and by written communication.

After initially granting Kirsten's motion to dismiss, the district court, on consideration of James's motion under Iowa Rule of Civil Procedure 179(b), reversed that ruling and found that Kirsten's contacts with this state were adequate to support the court's exercise of personal jurisdiction over her. Based on this conclusion, the court denied her motion to dismiss. We have granted Kirsten permission to appeal this ruling in advance of final judgment. Other facts bearing on the parties' claims will be discussed in connection with our consideration of the legal issues presented.

 When reviewing a district court's decision to exercise personal jurisdiction, the appellate court accepts as true the allegations of the petition and the contents of uncontroverted affidavits. *In re Marriage of Wallick*, 524 N.W.2d 153, 156 (Iowa 1994). The trial court's findings of fact have the effect of a jury verdict and are subject to challenge only if not supported by substantial evidence in the record. *In re Marriage of Crew*, 549 N.W.2d 527, 528 (Iowa 1996). The appellate court is not bound by the trial court's conclusions of law or its application of legal principles. *Id.; Larsen v. Scholl*, 296 N.W.2d 785, 787 (Iowa 1980).

 Under the Due Process Clause of the Fourteenth Amendment to the federal constitution, personal jurisdiction over a nonresident defendant only exists when that defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Heslinga v. Bollman*, 482 N.W.2d 921, 922 (Iowa 1992) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945)). These minimum contacts must be such that there is a sufficient connection between the defendant and the forum state so as to make it fair to force the defendant to defend the action in that state. *Wallick*, 524 N.W.2d at 157. The critical focus is on the relationship between the defendant, the forum, and the litigation. *Meyers v. Kallestead*, 476 N.W.2d 65, 67 (Iowa 1991) (citing *Rush v. Savchuk*, 444 U.S. 320, 327, 100 S.Ct. 571, 576, 62 L.Ed.2d 516, 524 (1980)).

This analysis is ordinarily a two-step process: (1) is there a statute or rule authoriz-

ing exercise of jurisdiction, and (2) does such jurisdiction offend due process principles? *Larsen,* 296 N.W.2d at 787. Iowa Rule of Civil Procedure 56.2 expands Iowa's jurisdictional reach to the widest due process parameters of the federal constitution. *Meyers,* 476 N.W.2d at 67; *Larsen,* 296 N.W.2d at 788. Therefore, because the jurisdiction of rule 56.2 is equivalent to the outer limits of due process, the two steps collapse into one. *Larsen,* 296 N.W.2d at 789.

■■■■ In analyzing due process principles in cases of this type, we ordinarily consider five factors:

 (1) the quantity of the contacts;

 (2) the nature and quality of the contacts;

 (3) the source and connection of the cause of action with those contacts;

 (4) the interest of the forum state; and

 (5) the convenience of the parties.

*Id.* James urges that the third factor is of paramount importance because fewer contacts by a defendant with the forum state are required when the cause of action arises from the defendant's activities within that state. This argument finds considerable support in the *International Shoe* case in which the Court recognized that certain single or occasional acts in a state will suffice "because of their nature and quality and the circumstances of their commission," to subject a defendant to the jurisdiction of the state as to causes of action arising out of those very acts. 326 U.S. at 318–20, 66 S.Ct. at 159–60, 90 L.Ed. at 103–05. This principle was reaffirmed in *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957).

More recently, in *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404, 411 (1984), the Court drew a distinction between "general" and "specific" jurisdiction based on the nature of the contacts with the forum state. This view was sharpened in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), in which the Court observed

 [w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.

*Burger King Corp.,* 471 U.S. at 472, 105 S.Ct. at 2182, 85 L.Ed.2d at 540–41 (footnote omitted) (citations omitted). We recognized and applied the *Burger King* single-act analysis in *State ex rel. Miller v. Baxter Chrysler Plymouth, Inc.,* 456 N.W.2d 371, 377 (Iowa 1990).

■■■■ In urging that the Iowa courts lack personal jurisdiction over her, Kirsten places considerable reliance on our decisions declining personal jurisdiction over nonresident defendants in actions seeking to alter existing marriage dissolution decrees entered in other jurisdictions. These cases include *Crew,* 549 N.W.2d at 528, *Wallick,* 524 N.W.2d at 157–58, and *Egli v. Egli,* 447 N.W.2d 409, 412 (Iowa App.1989).[1] These cases differ from the present case, however, because the alleged contacts with the State of Iowa (or in the *Bushaw* case, with the State of Louisiana) were not the basis of the claims being asserted. In the present case, the basis of the tort claim for negligent and fraudulent misrepresentation is a series of representations alleged to have been made to James in the State of Iowa by telephone and by mail.

The allegations in support of James's claim were:

 1. [A]n agent for the defendant ... supplied information to the Plaintiff's agent, Roger A. Huddle. This information consisted of statements that the Defendant had executed or would execute a release. This information was false.

 2. The Defendant had a financial interest in supplying this information to the Plaintiff.

 3. The Defendant intended the information in regard to the release to be given to the Plaintiff.

---

1. A similar factual situation was presented in *In re Marriage of Bushaw,* 501 N.W.2d 518, 521 (Iowa 1993), in which this court refused to honor a Louisiana judgment modifying an Iowa dissolution decree based on the insufficiency of contacts by an Iowa resident with the State of Louisiana.

4. The Defendant knew that this information would influence the actions of the Plaintiff, specifically that the Plaintiff would allow the child to move further from his home.

5. The Plaintiff, in allowing the child to move to Maryland, relied on the truth of the information supplied by the Plaintiff's agent and was justified in relying upon it.

6. The information supplied by the Defendant to the Plaintiff, was false and this was done either negligently, or fraudulently, by the Defendant.

In the papers submitted on the motion to dismiss, these allegations were fortified by the affidavit of plaintiff's attorney, Roger A. Huddle, that the alleged representations were made to James in Iowa by telephone and by writings delivered through the United States mail. Without in any way evaluating the merits of these claims, we are convinced that they may be pursued against Kirsten in the Iowa courts without violating the Due Process Clause.

When a plaintiff seeks recovery on multiple legal theories arising out of the same set of operative facts, the existence of personal jurisdiction as a result of acts on which any one theory is based allows the court to adjudicate liability on all theories alleged. *Tice v. Wilmington Chem. Corp.*, 259 Iowa 27, 44, 141 N.W.2d 616, 627 (1966); *see also Midland Forge, Inc. v. Letts Indus., Inc.*, 395 F.Supp. 506, 513 (N.D.Iowa 1975). The district court was correct in denying the motion to dismiss.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**