[No. B016074. Second Dist., Div. Five. Jan. 28, 1986.]

IRVIN MODLIN, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
KARIN MODLIN, Real Party in Interest.

COUNSEL

Levine, Krom & Unger, Tina S. Schuchman and Lance Portman for Petitioner.

No appearance for Respondent.

Richard J. Abrams, Peggy S. Meyers and Karin Modlin, in pro. per., for Real Party in Interest.

OPINION

HASTINGS, J.—In this original proceeding, real party, a resident of California, is seeking increased child support from her former husband (petitioner), a resident of New York. Petitioner challenges an order of the respondent court denying his motion to quash service of the summons on the

order to show cause filed by real party. We hold that the respondent court abused its discretion in denying the motion because (1) petitioner does not have sufficient "minimum contacts" with California to support the exercise of personal jurisdiction over him, and (2) the parties agreed that such disputes would be resolved under the laws of the State of New York.

## FACTS

Petitioner is a physician and professor of surgery at Yale University Medical School. In July 1978, he moved from England to Los Angeles where he worked at the Wadsworth Veterans' Hospital. Real party, still residing in England, joined him a few months later. The parties' daughter, Carmen, was born in Inglewood in February 1979. The parties returned to New York in July 1979, and were married there in October 1979. They divorced in New York in July 1981. In connection with the divorce, they executed a "Stipulation of Settlement" providing for the division of property and for spousal and child support. After the divorce, real party returned to California with Carmen.

Petitioner's recent "contacts" with the State of California are as follows: In connection with his position as a professor of surgery at Yale University Medical School (University), petitioner is required to participate in various meetings and conferences, which he attends either as a guest speaker or an invited professor. Petitioner attends these meetings all over the United States and in foreign countries. He is prohibited by the University from personally receiving any compensation for participating in these conferences.

Petitioner also does consulting work as part of his teaching duties. The University pays all of the fees for petitioner to maintain medical licenses in 19 states (including California) and foreign countries. Petitioner is prohibited by the University from receiving any compensation for these services or from conducting any private practice whatsoever.

Petitioner claims that he is "inundated" each year with opportunities to speak at and attend various conferences, and whenever possible he has tried to coincide his visits with Carmen with a meeting in Los Angeles area. During 1982, petitioner made two trips to California (out of fifteen business trips overall), during which he attended medical meetings and visited with Carmen. During 1983, petitioner made no business trips to California but traveled here twice, once to visit with Carmen and once to escort her to New York for visitation.[1] In 1984, he made one trip to California for a

---

[1] Personal jurisdiction cannot be premised solely upon petitioner's visits to Carmen. (See *Judd* v. *Superior Court*, 60 Cal.App.3d 38, 45 [131 Cal.Rptr. 246].)

conference and visitation with Carmen. In his declaration dated August 12, 1985, petitioner alleged that he had not traveled to California in 1985 and had no plans to do so. (Carmen is now able to travel alone and can spend more time with petitioner in New York.)

In her order to show cause filed with the respondent court, real party seeks (1) an increase in the child support payments provided for under the parties' settlement agreement and (2) a further modification to that agreement providing that disputes with respect to custody of Carmen be determined by a California court, and not by binding arbitration in New York, as provided in the agreement. Petitioner appeared specially and moved to quash service of the summons on the grounds he was not a resident of California and lacked sufficient "minimum contacts" with this state to warrant this state's assertion of personal jurisdiction over him. The respondent court's denial of that motion gave rise to the within petition.

## DISCUSSION

"California may not exercise personal jurisdiction over an out-of-state parent to modify an agreement for support of a child living in California unless jurisdiction is established through sufficient minimum contacts within the state." (*Kumar* v. *Superior Court* (1982) 32 Cal.3d 689, 703 [186 Cal.Rptr. 772, 652 P.2d 1003], citing *Kulko* v. *California Superior Court* (1978) 436 U.S. 84 [56 L.Ed.2d 132, 98 S.Ct. 1690].) Although the existence of sufficient contacts depends upon the facts of each case, the determination must be made on a finding of the following two factors: Some act by which the defendant has purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws (*Kulko* v. *California Superior Court, supra,* 436 U.S. at p. 94 [56 L.Ed.2d at pp. 142-143]) and a sufficient relationship ("nexus") between the defendant and the forum state such that the exercise of personal jurisdiction is reasonable and fair (*International Shoe Co.* v. *Washington* (1945) 326 U.S. 310, 316-317 [90 L.Ed. 95, 101-103, 66 S.Ct. 154, 161 A.L.R. 1057]). "The determination of 'fairness' requires a balancing of the burden or inconvenience to the defendant against plaintiff's interest in obtaining relief, and the state's interest in adjudicating [the] dispute (a question which ultimately turns on the nature and quality of defendant's forum related activity.)" (Hogoboom & King, Cal. Practice Guide Family Law § 3.27, italics deleted.)

The respondent court analyzed the situation in accordance with the factors set forth in *International Shoe Co.* v. *Washington, supra*:

"One is presence. The court would find that the respondent is not present within this jurisdiction.

"Second is domicile. Court would find that the respondent is not domiciled in this jurisdiction.

"Third is residence. Likewise, the respondent does not reside in this jurisdiction.

"Fourth, his nationality or citizenship. As I understand it, the respondent has not paid taxes in the State of California, nor is he a citizen of California for that purpose.

"Five is consent. Respondent is obviously not consenting to jurisdiction.

"Six is general appearance. Respondent has not made a general appearance.

"Seven is doing business in the state. We will come back to that.

"Eight is doing an act within the state. The court would find that the respondent may or may not have done an act within the state, and we will have to discuss some of the statements contained in the declarations.

"Nine is causing an effect in the state by an act done elsewhere.

"I can't find anything in the declarations which would include that as one of the criteria to be considered by the court to establish jurisdiction.

"Ten is ownership or possession or use of a thing within the state.

"I don't believe the declarations establish that the respondent owns any real property or personal property or any tangible property, for that matter, within the State of California so as to confer jurisdiction.

"Eleven is 'other relationships to the state which make the exercise of judicial jurisdiction reasonable.' And I think eleven has to be lumped in with whether he is doing business in the state or doing an act within the state. And the court thinks that the matter hinges substantially, in part, on the fact that Dr. Modlin has apparently taken some assertive act to maintain his license as a physician in the State of California.

"His license, according to the declarations contained in the file in case number RESL 170706, indicate that Dr. Modlin has apparently renewed his license since he left the State of California and went to reside in New York; that he is still licensed to practice medicine in the State of California; and that his license does not expire until 1986; he is carried on the list of Cal-

ifornia physicians; and that he apparently does make occasional visits to the State of California for the purpose of lecturing.

"Dr. Modlin indicates that he tries to coincide his visits to the State of California with both visitation of the minor child and, peripherally or tangentially, certain business lecturing in his medical field.

"However, that is like saying if you go to the Bar Convention in London, you can write off everything if in fact you are going to spend two weeks traveling around in London and two days at the Bar Convention.

"I think there is sufficient in the record to establish that there are minimum contacts but contacts, nevertheless, so as to confer jurisdiction on Dr. Modlin.

"The court, therefore, will deny the motion to quash."

The only two factors which the court found (and indeed could have found) to support the exercise of personal jurisdiction over petitioner were (1) his license to practice medicine in this state and (2) his occasional trips to attend medical conferences and visit with Carmen. Petitioner established that his license fees were paid by Yale University and that he does not personally derive any income or engage in the private practice of medicine in this state. With respect to petitioner's occasional visits to California, aside from trips made only to visit Carmen or to escort her to New York, petitioner made only three trips to California in four years. Petitioner stated that he chose to attend medical conferences in California only because Carmen lived here. Petitioner's relationship with this state is tenuous at best, and in fact would be almost nonexistent had real party not chosen to reside here with Carmen.

Most significant in this case is the fact that this state does not have an interest in adjudicating the parties' dispute, since at the time of their divorce in July 1981, they agreed to litigate matters of custody and child support in the State of New York.

Petitioner and real party executed an elaborate settlement agreement consisting of nearly 40 pages. That agreement provides, among other things, as follows:

(1) The parties were awarded joint custody of Carmen, and any disputes regarding custody were to be submitted to the American Arbitration Association in New York City.

(2) Real party was to be paid spousal support of $577 per week for one year and $423 per week for the next two years.

(3) Child support was to be paid in the sum of $150 per week for five years, $175 per week for the next three years, and $200 per week until Carmen reached the age of majority.

(4) Should petitioner default in the payment of spousal or child support, real party was entitled to seek an "Ex Parte 49B Wage Assignment" pursuant to the personal property law of the State of New York.

(5) If petitioner's income decreased, any dispute regarding a reduction in spousal or child support is to be submitted to the American Arbitration Association in New York City. If petitioner is successful in obtaining reduction in spousal or child support, and real party later wants an increase, the dispute is to be submitted to the American Arbitration Association or the New York Supreme Court for New York County; and

(6) All matters affecting the interpretation and rights of the parties under the agreement is to be governed by the laws of the State of New York.

These provisions reflect the clear intent of the parties that disputes arising under the agreement be resolved in the State of New York pursuant to New York law. Real party cannot now be permitted to change her mind, especially in view of petitioner's tenuous contacts with this state. The agreement of the parties must prevail. Basic considerations of fairness point decisively in favor of petitioner's state of domicile, New York, as the proper forum for adjudication of this case. As the Supreme Court stated in *Kulko, supra,* "It is appellant who has remained in the State of the marital domicile, whereas it is appellee who has moved across the continent." (436 U.S. at p. 97 [56 L.Ed.2d at p. 144].)

Let a peremptory writ of mandate issue directing the respondent court to vacate its order of August 22, 1985, denying the motion of respondent/ petitioner Irwin Modlin to quash service of summons, and enter a new and different order granting said motion.

Feinerman, P. J., and Eagleson, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied April 23, 1986.