Filed 12/17/18 (unmodified opinion attached)

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DAVID L., | D073996 |
| Petitioner, | (San Diego County |
| v. | Super. Ct. No. 17FL010385E) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | ORDER MODIFYING OPINION |
| Respondent; | **NO CHANGE IN JUDGMENT** |
| MARIANA C., | |
| Real Party in Interest. | |


THE COURT:

It is ordered that the opinion filed on November 26, 2018 be modified as follows:

1.  Page 1 of appearances, the words "Law Offices of Stephen Temko and" is deleted.

2.  On the first sentence and first paragraph of page 15, beginning with "Were *Pavlovich* still the applicable test," delete the word "affirm" and insert "deny the petition" so that the sentence reads:

Were *Pavlovich* still the applicable test, we might be inclined to deny the petition on the basis that David expressly aimed his conduct at California, knowing his intentional conduct might produce an effect (a child) in this forum.

3. On the second sentence of the first full paragraph on page 20 that begins with

"Mariana's declared," delete and insert "Mariana declared" so the sentence reads:

Mariana declared that she and David had sexual relations between 2001 and 2009 in "various hotels in California as well as other states."

**There is no change in judgment.**

HUFFMAN, Acting P. J.

Copies to: All parties

Filed 11/26/18 (unmodified opinion)
CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DAVID L., | D073996 |
| Petitioner, | |
| v. | (San Diego County Super. Ct. No. 17FL010385E) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| MARIANA C., | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS in mandate following denial of motion to quash service of summons for lack of personal jurisdiction pursuant to Code of Civil Procedure section 418.10. Frank L. Birchak, Judge. Petition granted.

Law Offices of Stephen Temko and Dennis Geis Temko for Petitioner.

No appearance for Respondent.

Legal Aid Society of San Diego, Maria Maranion Kraus, and Ali Puente-Douglass for Real Party in Interest.

Consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution, may California exercise specific personal jurisdiction over a nonresident in a paternity action where the mother and young child live in California and conception occurred in another state?  Mariana L. initiated a paternity and child support action in San Diego County against David L., a Connecticut resident.[1]  The trial court denied David's motion to quash service, and he seeks writ review.

On the particular facts presented, we answer the question in the negative and issue a writ of mandate to prevent the exercise of jurisdiction.  David's knowledge that Mariana resided in California and the foreseeability of California effects (a child) from their out-of-state sexual intercourse are insufficient to establish the requisite minimum contacts. (*Walden v. Fiore* (2014) 571 U.S. 277, 289 (*Walden*).)  Specific jurisdiction must rest on David's own suit-related contacts *with California*, not merely a plaintiff who lives here. (*Id.* at pp. 288−289.) Those contacts must create a "substantial connection" with this state for jurisdiction to lie.  (*Id.* at p. 284.)  Recognizing that the inquiry is fact-specific, on the record before us the *Walden* standard was not met.  California thus cannot exercise personal jurisdiction over David in this paternity and child support action.

---

[1]     We refer to the parties by their first name and last initial to protect the privacy interests of the child.  (Cal. Rules of Court, rule 8.90(b)(1), (b)(10) & (b)(11).)

FACTUAL AND PROCEDURAL BACKGROUND

In September 2017, Mariana filed a petition in San Diego County to establish parentage and seek child support, naming David as her one-month-old daughter's father. The petition claimed the court had jurisdiction over David because Mariana and her daughter lived in California. It attached an affidavit signed by Mariana's husband at the time, who denied paternity. Mariana served the petition and summons on David by certified mail to his address in Connecticut.

David made a special appearance to contest jurisdiction, filing a motion to quash the service of summons under section 418.10 of the Code of Civil Procedure. In an attached declaration, David stated he had never lived in California or owned property, paid taxes, registered to vote, opened a bank account, or had a driver's license here. If the child was his, it was conceived outside California. His actions did not force Mariana to move to California; she already lived and intended to remain there when they met in Nebraska nine months before her daughter's birth. Although David made a few visits to California relating to his work as a concert promoter, he was "never in California except for business," and Mariana's action had nothing to do with his business activities.

Mariana opposed the motion, noting David had made both personal and work-related trips to California "numerous times." Her declaration explained that they had an on-and-off intimate relationship spanning 17 years. They met in 2001 and were intimate until 2009 in "various hotels in California as well as other states"; in 2003, Mariana got pregnant and suffered a miscarriage. Mariana knew David was married, but she thought

3

he did not love his wife. She stopped seeing David in 2009 after learning that he and his wife had a nine-year-old daughter.

Time passed. Mariana got married but resumed communicating with David in 2013 because her marriage was struggling and David stated he had gotten divorced. They spoke by text message and phone until meeting casually in Las Vegas in 2015. In April 2016 and August 2016, David made two business trips to California during which he saw and spent the night with Mariana. She visited David in November 2016 in Omaha, Nebraska during another of David's business trips. It was there that she conceived her daughter. Although Mariana was married at the time, she had not been intimate with her husband, and he signed an affidavit of nonpaternity.

As Mariana explained in her declaration, David knew she was a California resident and would raise any child resulting from their relationship in California. Mariana lived in California throughout her pregnancy, gave birth in this state, and presently resides with her daughter in San Diego County. Because she does not work outside the home, it would pose financial hardship to travel to Connecticut to establish paternity and child support.

Mariana submitted a string of text messages that she exchanged with David from April to November 2016. Consistent with her declaration, the messages indicated that she met David in Palm Desert in April 2016 and in Anaheim in August 2016 during David's business trips to the state. Text messages also corroborated Mariana's visit to see David in Nebraska in November 2016. Two weeks after that visit Mariana announced she was pregnant and that David was the father. She explained she did not expect David

4

to parent the child but would be seeking child support in California. Their last communication was in January 2017, when David told her to communicate through attorneys going forward.

David filed a motion to strike objecting to portions of Mariana's declaration. He objected on relevance grounds to: (1) Mariana's discussion of how they met in 2001 and the "on-off" nature of their 17-year relationship; (2) Mariana's 2003 miscarriage and prior sexual acts in California that did not result in pregnancy; and (3) Mariana's claim that her husband knew he was not the father and was not obligated to provide support. David reiterated in his reply brief that he lacked sufficient contacts with California, explaining his sporadic business trips were "completely unrelated to this paternity case."

At the hearing on David's motion, the court overruled David's objections and accepted both parties' declarations into evidence. It explained that the 2003 miscarriage was relevant to show "there was a period of time where sexual intercourse was occurring in the state of California resulting in a conception even though the child was not carried to term."[2] This showed "continuing contacts or sufficient contacts with the state on a related issue" enabling the court to exercise jurisdiction under the broad catchall provision in Family Code section 5700.201, subdivision (a)(8).[3] It continued the matter

---

[2]    The court did not explain how it determined that the 2003 pregnancy involved conception in California; Mariana's declaration simply stated the parties had an intimate relationship in California "as well as other states" between 2001 and 2009.

[3]    Further statutory references are to the Family Code unless otherwise indicated. We explore section 5700.201 in the discussion section.

to decide whether the Family Code section 7540 presumption applied and whether David would be ordered to take a paternity test, indicating Mariana's husband was a necessary party. The court signed a Findings and Order after Hearing consistent with its oral ruling, stating in relevant part:

> "The Court finds that it has personal jurisdiction over [David] in that there was a period of time where sexual intercourse was occurring in the state of California resulting in a conception even though the child was not carried to term, and this is sufficiently related and tied to the issue here that California does, and [David] does, have sufficient continuing contacts or sufficient contacts with the state of California that are relevant to the litigation at issue for this Court to exercise jurisdiction over him."

David seeks writ relief from the trial court's decision denying his motion to quash. In May 2018, we issued an alternative writ and stayed proceedings in the trial court.

## DISCUSSION

David argues California lacks personal jurisdiction over him and therefore cannot adjudicate Mariana's paternity and child support claims. The trial court relied heavily on Mariana's 2003 conception and miscarriage to find "sufficient contacts with the state on a related issue" to establish personal jurisdiction. But as we explain, we conclude personal jurisdiction is lacking under *Walden, supra,* 571 U.S. 277.

### A

"In a proceeding to establish or enforce a support order or determine parentage of a child," section 5700.201 identifies seven statutory bases for personal jurisdiction over a nonresident. One of those bases applies when a child is conceived in this state (§ 5700.201, subd. (a)(6)), but the parties agree that Mariana's daughter was not

6

conceived in California. In addition to the seven statutory options, section 5700.201 includes a catchall provision, recognizing "any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction." (§ 5700.201, subd. (a)(8).)[4] The parties agree that this catchall is the only potential statutory basis for the family court to assert personal jurisdiction over David. Accordingly, our inquiry turns on the constitutional limits for personal jurisdiction.

The Fourteenth Amendment's Due Process Clause "constrains a State's authority to bind a nonresident defendant to a judgment of its court." (*Walden*, *supra*, 571 U.S. at p. 283.) These limits to a state's adjudicative power "principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." (*Id.* at p. 284.) A nonresident defendant must have "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 (*International Shoe*).)

"Personal jurisdiction may be either general or specific." (*Vons*, *supra*, 14 Cal.4th at p. 445.) General jurisdiction "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit (*e.g.*, domicile)." (*Walden*, *supra*, 571 U.S. at p. 283, fn. 6.) A defendant's forum contacts must be "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum state."

_____

4    California's long-arm statute likewise permits courts to exercise personal jurisdiction to the fullest extent permissible under the federal or state constitutions. (Code Civ. Proc., § 410.10; *Vons Companies*, *Inc. v. Seabest Foods*, *Inc.* (1996) 14 Cal.4th 434, 445 (*Vons*).)

7

(*Daimler AG v. Bauman* (2014) 571 U.S. 117, 139 (*Daimler*).) "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." (*Goodyear Dunlop Tires Operations S.A. v. Brown* (2011) 564 U.S. 915, 924 (*Goodyear*).) If "a defendant's contacts with the forum are so wide-ranging that they take the place of physical presence in the forum" (*Vons*, at p. 446), " 'it is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum.' " (*Id.* at p. 445.)

Contrary to Mariana's claim, David's sporadic business contacts to promote concerts over the years in California do not establish general jurisdiction. David's contacts were not so continuous and systematic as to render him "essentially at home" in California. (*Daimler*, *supra*, 571 U.S. at p. 139; *Goodyear*, *supra*, 564 U.S. at p. 919.) Nor does Mariana explain how facts such as "the popularity of the artists [David] represents and their large fan-base" are jurisdictionally relevant.

A nonresident defendant lacking sufficient contacts for general jurisdiction "still may be subject to the *specific* jurisdiction of the forum." (*Vons*, *supra*, 14 Cal.4th at p. 446.) Specific or " 'case-linked' " jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." (*Walden*, *supra*, 571 U.S. at pp. 283–284 & fn. 6.) In particular, "the defendant's suit-related conduct must create a substantial connection with the forum state." (*Id.* at p. 287.)

There are three requirements for a court to exercise specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed himself or herself of forum benefits or purposefully directed activities at forum residents. Second,

8

the controversy must relate to or arise out of the defendant's forum-related activities. Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. (*Snowney v. Harrah's Entertainment*, *Inc.* (2005) 35 Cal.4th 1054, 1062 (*Snowney*); *Vons*, *supra*, 14 Cal.4th at p. 447.) Only if the plaintiff makes the initial showing on the first two requirements does the burden shift to the defendant to show that exercising jurisdiction would be unreasonable. (*Snowney*, at p. 1062; *Vons*, at p. 449.)

"When there is conflicting evidence, the trial court's factual determinations are not disturbed on appeal if supported by substantial evidence." (*Vons*, *supra*, 14 Cal.4th at p. 449.) "When no conflict in the evidence exists, however, the question of jurisdiction is purely one of law and the reviewing court engages in an independent review of the record." (*Ibid.*)

The crux of Mariana's argument is that jurisdiction is proper because "David knew that Mariana is a resident of California and if she were to conceive a child, she will raise the child in California." This reasoning is based on the "effects" test often applied in intentional tort cases, deriving principally from *Calder v. Jones* (1984) 465 U.S. 783 (*Calder*). To apply the effects test to this case, we must trace its evolution from *Kulko v. Superior Court* (1978) 436 U.S. 84 (*Kulko*) to *Calder* to *Walden* and highlight intervening cases interpreting each of these in turn.

B

*Kulko* addressed specific jurisdiction in the family law context. A California resident sued her ex-husband, a New York resident, for increased child support. (*Kulko*, *supra*, 436 U.S. at p. 88.) The California Supreme Court concluded there was personal

9

jurisdiction because the ex-husband had caused an "effect" in California by an act outside the state—i.e., agreeing to send his daughter to live with her mother there. (*Id.* at p. 89.) At the time, "[o]ne of the recognized bases for jurisdiction in California [arose] when the defendant has caused an 'effect' in the state by an act or omission which occurs elsewhere." (*Sibley v. Superior Court* (1976) 16 Cal.3d 442, 445 (*Sibley*), citing *Quattrone v. Superior Court* (1975) 44 Cal.App.3d 296, 303 (*Quattrone*).)

The United States Supreme Court reversed. The ex-husband had not, by permitting their daughter to move to California to live with her mother, "purposefully availed" himself of California benefits and protections. (*Kulko*, *supra*, 436 U.S. at p. 94.) Consequently, the California Supreme Court's reliance on the "effects" test was misplaced. (*Id.* at p. 96.) Without addressing the validity of that test, *Kulko* explained that even if it applied, jurisdiction would be *unreasonable* on the facts. The ex-husband had not inflicted an injury on California residents or sought a commercial benefit in the state—the child support action arose "not from the defendant's commercial transactions in interstate commerce, but rather from his personal, domestic relations." (*Id.* at p. 97.)

A few months after *Kulko*, *Bartlett v. Superior Court* (1978) 86 Cal.App.3d 72 addressed a question of personal jurisdiction on facts somewhat similar to those here. A California resident conceived a child in Florida with a Florida resident who denied parentage. (*Id.* at p. 74.) A California agency filed a petition to recoup child support and welfare funds, and the alleged father moved to quash for lack of personal jurisdiction. (*Id.* at pp. 74−75.) The trial court denied the motion to quash but the court of appeal granted writ relief, concluding that California courts lacked personal jurisdiction over the

10

alleged father.  In rejecting jurisdiction based on his causing a California resident to become pregnant, *Bartlett* interpreted *Kulko* to hold that the effects test "is not applicable to personal domestic relations."  (*Id.* at p. 76.)

Later California cases have read *Kulko* more narrowly as holding merely that the effects test would not apply *to the facts of that particular case*.  (*Kulko*, *supra*, 436 U.S. at pp. 96−97.)  Accordingly, these decisions have applied the effects test to domestic relations cases with different fact patterns.  In *In re Marriage of Lontos* (1979) 89 Cal.App.3d 61 (*Lontos*), for example, the court found personal jurisdiction in a child support action over a Marine stationed in New Mexico based in part on the "effect" his abandonment of his wife and three children had in compelling their return to California and dependence on public aid.  (*Id.* at pp. 71−72.)  And in *McGlothen v. Superior Court* (1981) 121 Cal.App.3d 106 (*McGlothen*), on similar facts the court found jurisdiction over a professional baseball player whose abandonment of his wife and children in Louisiana produced an "*effect in this state*" upon their return home to California.  (*Id.* at p. 113.)  Both courts distinguished *Kulko*, concluding the husbands' actions made the exercise of jurisdiction in California reasonable.  (*Lontos*, at p. 72; *McGlothen*, at p. 113.)[5]

---

[5]    In line with *Lontos*, *supra*, 89 Cal.App.3d 61 and *McGlothen*, *supra*, 121 Cal.App.3d 106, Family Code section 5700.201, subdivision (a)(5) recognizes personal jurisdiction in California if "the child resides in this state as a result of the acts or directives of the [nonresident] individual."  The parties agree this basis does not apply here.  The daughter's "residence in California was not a result of David's acts or directives," and "Mariana moved to California for reasons [having] nothing to do with David."

The conclusion that *Kulko* necessarily forecloses application of the effects test to domestic relations cases is the sole basis offered for *Bartlett*'s holding that a Florida man did not subject himself to California jurisdiction by causing a California resident to become pregnant. (*Bartlett*, *supra*, 86 Cal.App.3d at p. 76.)[6] Absent further guidance from the United States Supreme Court on the meaning of *Kulko*, we would likely be forced to confront the implicit conflict between *Bartlett* on one hand and *Lontos* and *McGlothen* on the other. But the intervening 40 years have produced two United States Supreme Court opinions and numerous decisions from lower courts that inform our analysis and, in the case of the high court precedent, dictate a result consistent with *Bartlett* even if it does not follow similar reasoning.

C

In *Calder*, *supra*, 465 U.S. 783, the Supreme Court revisited the effects test it had discussed in *Kulko*. Actress Shirley Jones sued a tabloid writer and editor for libel based on an article published in the National Enquirer. The defendants, both Florida residents, moved to quash service of process claiming California lacked personal jurisdiction. The Supreme Court disagreed, relying on four factors to establish the requisite minimum contacts: (1) defendants expressly aimed and intentionally directed conduct toward California knowing Jones lived there; (2) their conduct was "calculated to cause injury";

---

6      *Bartlett* also concluded that specific jurisdiction could not rest on the defendant's three trips to California with the Navy "for a business reason unrelated to his personal association with [the child's mother]." (*Bartlett*, *supra*, 86 Cal.App.3d at pp. 75−76.) We reach a similar conclusion, as discussed below.

(3) Jones experienced "effects" in California; and (4) California was the "focal point" of their misconduct, given defendants' reliance on California sources, publication, and readership.  (*Calder*, at p. 791.)

In the years after *Calder*, courts " 'struggled somewhat with *Calder*'s import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction.' " (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 270 (*Pavlovich*).)  During this time, courts continued to rely on the *Sibley*/*Quattrone* effects test, which subjected a nonresident to jurisdiction for intentionally causing effects in California unless doing so would be unreasonable.  (*Jamshid-Negad v. Kessler* (1993) 15 Cal.App.4th 1704, 1708, citing *Sibley*, *supra*, 16 Cal.3d at p. 446; *Quattrone*, *supra*, 44 Cal.App.3d at p. 305.)  Thus, for example, in *Jamshid-Negad*, Connecticut parents could be sued in California for negligent supervision of their son because they acquiesced in his decision to attend a California state university and paid his tuition, thereby "taking advantage of the state's establishment of quality public higher education."  (*Jamshid-Negad*, at p. 1709.)

In 2002, surveying federal appeals court decisions, the California Supreme Court joined the prevailing view that "the *Calder* effects test requires intentional conduct *expressly aimed at or targeting* the forum state in addition to the defendant's knowledge that his intentional conduct would cause harm in the forum."  (*Pavlovich*, *supra*, 29 Cal.4th at pp. 271−273.)  It cited with approval the express aiming requirement of the United States Court of Appeals for the Third and Ninth Circuits. (*Id.* at p. 272; see *IMO Industries*, *Inc. v. Kiekert AG* (3d Cir. 1998) 155 F.3d 254, 265–266 [requiring (1) an

13

intentional tort; (2) causing the brunt of the harm in the forum state; and (3) express aiming of tortious conduct at the forum state]; *Mavrix Photo*, *Inc. v. Brand Technologies*, *Inc*. (9th Cir. 2011) 647 F.3d 1218, 1228 [requiring (1) an intentional act; (2) expressly aimed at the forum state; (3) that causes harm the defendant knew would likely be felt in the forum state].)

Applying the express aiming or intentional targeting requirement, the *Pavlovich* court concluded California could not exercise personal jurisdiction over an out-of-state resident lacking California contacts based on source code he posted on a passive website "accessible to any person with Internet access." (*Pavlovich*, *supra*, 29 Cal.4th at p. 273.) The defendant's knowledge he might harm California industries was relevant but insufficient on its own to establish express aiming at this state. (*Id.* at p. 278.)

D

Were *Pavlovich* still the applicable test, we might be inclined to affirm on the basis that David expressly aimed his conduct at California, knowing his intentional conduct might produce an effect (a child) in this forum. Unlike the defendant in *Pavlovich*, David expressly aimed his conduct at a California resident rather than simply knowing the effects of his conduct might be felt here. Nevertheless, we believe the Supreme Court's 2014 decision in *Walden*, *supra*, 571 U.S. 277 compels a different approach.

In *Walden*, professional gamblers from Nevada and California sued a Georgia police officer in Nevada federal court for actions taken by that officer in Georgia. The officer had seized a suitcase of cash carried by the gamblers while they were in transit

14

from Puerto Rico to Las Vegas. (*Walden*, *supra*, 571 U.S. at pp. 279−280.) At some point, the officer allegedly drafted a false affidavit to show probable cause for forfeiture of the funds. (*Id.* at pp. 280−281.) All the actions took place in Georgia; yet the Ninth Circuit upheld personal jurisdiction on the basis he " 'expressly aimed' " his submission of the false affidavit at Nevada by knowing it would affect persons with a " 'significant connection' " to that state. (*Id.* at p. 282.)

The United States Supreme Court reversed in a unanimous decision, concluding that due process did not permit the exercise of personal jurisdiction over the Georgia officer. According to *Walden*, the Ninth Circuit erred by basing personal jurisdiction over the officer on his knowledge of the travelers' *strong forum connections* and the *foreseeability of harm* in Nevada. (*Walden*, *supra*, 571 U.S. at p. 289.) As the Court explained,

> "This approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis. [The officer's] actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis. [Citation.] It also obscures the reality that none of the petitioner's challenged conduct had anything to do with Nevada itself." (*Ibid.*)

Although injury was felt in Nevada, "mere injury to a forum resident is not a sufficient connection to the forum." (*Walden*, *supra*, 571 U.S. at p. 290.) "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." (*Ibid.*) The

15

Ninth Circuit erred by failing to look at the officer's "own contacts" with the forum, apart from his knowledge of the travelers' connections there.  (*Id.* at pp. 289−290.)

*Walden* reasoned that jurisdiction was proper in *Calder* because of "the various contacts the defendants had created with California (and not just with the plaintiff) by writing the allegedly libelous story."  (*Walden*, *supra*, 571 U.S. at p. 287.)  The tabloid defendants relied on California *sources* to write the article and on wide circulation among California readers.  (*Ibid.*)  And because reputational torts require publication to third persons, "the defendants' intentional tort actually occurred *in* California."  (*Id.* at p. 288.) "In this way, the 'effects' caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there."  (*Ibid.*)  While the court focused on facts inherent to a reputational tort, *Walden* also seemed to reiterate *Calder*'s " 'focal point' " test, highlighting "the various facts that gave the article a California focus."  (*Walden*, at pp. 287–288.)[7]

*Walden* emphasized two core principles underlying the "defendant-focused" jurisdictional inquiry.  First, a nonresident defendant's forum-connection "must arise out of contacts that the 'defendant *himself*' creates with the forum State," not "contacts between the plaintiff (or third parties) and the forum State."  (*Walden*, *supra*, 571 U.S. at

---

7    At least one commentator has questioned *Walden's* seemingly "revisionist" recharacterization of *Calder*.  (Erbsen, *Personal Jurisdiction Based on the Local Effects of Intentional Misconduct* (2015) 57 Wm. & Mary L.Rev. 385, 412 [although the holdings in the two cases can be reconciled, "Walden nevertheless provides a revisionist account of Calder's reasoning"].)

p. 284.)  This is because "the 'minimum contacts' inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff."  (*Id.* at pp. 284, 290, fn. 9.) Second, the " 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  (*Id.* at p. 285.)  "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."  (*Ibid.*, citing *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 478 (*Burger King*) and *Kulko*, *supra*, 436 U.S. at p. 93.)

As *Walden* makes clear, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."  (*Walden*, *supra*, 571 U.S. at p. 286.)  It is not enough "to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff.' "  (*Ibid.*)  Instead, to find specific jurisdiction, a court must look to the defendant's "own" suit-related contacts with the forum to see if they create a "*substantial connection with the forum State*," not just "with persons who reside there."  (*Id.* at pp. 284–285, 289, italics added in second quote.)

Shortly after *Walden* was decided, Division Three of the Fourth Appellate District considered whether it had jurisdiction under the effects test over an Illinois resident who posted defamatory statements on his personal Facebook page about someone he knew lived in California.  (*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 13, 15 (*Burdick*).)  The trial court found personal jurisdiction and denied the defendant's motion to quash.  Citing *Walden*, *supra*, 571 U.S. 277, the court of appeal reversed, deeming it

17

"necessary that the nonresident defendant not only intentionally post[ed] the statements on the Facebook page, but that the defendant expressly aim[ed] or specifically direct[ed] his or her intentional conduct *at the forum*, rather than at a plaintiff who live[d] there." (*Burdick*, at p. 13, italics added.)

As the *Burdick* court explained, "*Walden* teaches that the correct jurisdictional analysis focuses on (1) the defendant's contacts with the forum, not with the plaintiff, and (2) whether those contacts create the relationship among the defendant, the forum, and the litigation necessary to satisfy due process." (*Burdick*, *supra*, 233 Cal.App.4th at pp. 23−24, internal quotations omitted.) In *Burdick*, "[t]he only conduct which might connect [the nonresident] in a meaningful way with California was the allegedly defamatory posting on his Facebook page," and that conduct did not create a substantial connection with California even though he knew the posting would harm California residents. (*Id.* at pp. 24−25.)

Although the California Supreme Court has not addressed the impact of *Walden* on the *Pavlovich* effects test, California's test mirrors the Ninth Circuit's, which has changed post-*Walden*. (*Pavlovich*, *supra*, 29 Cal.4th at pp. 272−273.) It is no longer enough in the Ninth Circuit to base specific jurisdiction on a defendant's individualized targeting of a plaintiff known to reside in the forum state. (*Axiom Foods*, *Inc. v. Acerchem International*, *Inc.* (9th Cir. 2017) 874 F.3d 1064, 1070 (*Axiom Foods*).) "*Walden* requires more." (*Axiom Foods*, at p. 1069.) The Ninth Circuit now looks "to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections there." (*Id.* at p. 1070.) Even if a defendant has individually

18

targeted conduct at a plaintiff he knows resides in the forum state, specific jurisdiction now lies under the Ninth Circuit's effects test *only* if his suit-related conduct creates a *substantial connection* with that state. (*Id.* at p. 1068, citing *Walden*, *supra*, 571 U.S. at p. 284.) We believe that is the test we now must apply.

E

In this case, the only "suit-related conduct" tying David to California is his on-and-off relationship with Mariana, a California resident. His business trips to California as a concert promoter or personal visit to the Ronald Reagan Presidential Library are too disconnected to the paternity action standing alone to be jurisdictionally relevant. (*Judd v. Superior Court* (1976) 60 Cal.App.3d 38, 44 [dissolution action did not arise out of nonresident's alleged business contacts with the state]; see *Walden*, *supra*, 571 U.S. at p. 283, fn. 6 [specific jurisdiction rests on a link between the forum and the controversy]; *Goodyear*, *supra*, 564 U.S. at p. 919 ["specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction' "].)

Nor do we find David's *past* contacts with Mariana in California jurisdictionally relevant. Mariana's declared that she and David had sexual relations between 2001 and 2009 in "various hotels in California as well as other states." Contrary to the trial court's finding, there is no nonspeculative evidence to suggest her 2003 pregnancy resulted from "interactions in the state of California." In fact, there is no nonspeculative basis in the record to gauge how much of their 2001 through 2009 relationship centered in California. Even if there were, decade-old contacts are too remote in time to establish specific

19

jurisdiction in this paternity action. We consider "the contacts at the time of the proceeding and not on whether past minimum contacts might suffice." (*Muckle v. Superior Court* (2002) 102 Cal.App.4th 218, 227 [Georgia resident's contacts with California 12 years before the dissolution action were not relevant].)

Accordingly, we focus on David's California contacts that are reasonably connected to Mariana's paternity and child support action. After a seven-year hiatus, David and Mariana resumed an intimate relationship in 2016. David made a handful of work-related trips to California that year; on two of these trips, he saw Mariana. In April 2016, David traveled to Palm Desert, where he met Mariana at a concert venue. He went to Arizona afterwards and returned two days later, spending the next two nights with her at a Los Angeles hotel. Four months later, in August 2016, they spent two nights together at an Anaheim hotel. This amounted at most to three interactions in California during two business trips four months apart. Two months after these California visits, Mariana saw David in Nebraska and conceived a child.

To be sure, Mariana was a California resident and David knew that fact. David exchanged phone calls and text messages with Mariana in California until shortly after she became pregnant. Since her birth, Mariana's daughter has lived with her mother in California. But to find specific jurisdiction, *Walden* instructs that Mariana and her daughter "cannot be the only link[s] between the defendant and the forum." (*Walden*, *supra*, 571 U.S. at p. 285.) It is not enough that David knew Mariana was a California resident and reasonably knew the effects of any intercourse resulting in pregnancy would necessarily be felt in California. (*Id.* at p. 289.) Simply directing conduct at a plaintiff

20

knowing that she has significant California connections does not satisfy the minimum contacts inquiry.  (*Ibid.*)

"The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  (*Walden*, *supra*, 571 U.S. at p. 290.)  For specific jurisdiction to exist, David's "suit-related conduct" must have created a "substantial connection" with California *apart from* Mariana's connections there.  (*Id.* at p. 284; see *Burdick*, *supra*, 233 Cal.App.4th at pp. 24−25; *Axiom Foods*, *supra*, 874 F.3d at p. 1070.)  The record does not support that jurisdictional finding.  Apart from Mariana's significant connections to California, David's suit-related conduct from his trips to California in April and August 2016 was not "tethered to [this state] in any meaningful way."  (*Walden*, *supra*, 571 U.S. at p. 290.) Even if we view conception in Nebraska as connected to David's course of California conduct, David had insufficient suit-related contacts *with California* to support the exercise of jurisdiction.[8]

---

[8]     California courts have traditionally required only a " 'substantial nexus or connection between the defendant's forum activities and the plaintiff's claim.' " (*Snowney*, *supra*, 35 Cal.4th at p. 1068, citing *Vons*, *supra*, 14 Cal.4th at p. 456.)  Under *Snowney* and *Vons*, " 'the intensity of forum contacts and the connection of the claim to those contacts are inversely related' "; the more wide-ranging a defendant's contacts, the more readily a nexus is shown.  (*Snowney*, at p. 1068, citing *Vons*, at p. 452.) Consequently, " '[a] claim need not arise directly from the defendant's forum contacts in order to be sufficiently related to the contact to warrant the exercise of specific jurisdiction.' "  (*Snowney*, at p. 1068, citing *Vons*, at p. 452.)

Recently, the United States Supreme Court questioned California's " 'sliding scale approach' " as "difficult to square with our precedents."  (*Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County* (2017) 137 S.Ct. 1773, 1781.)  It found no adequate link between the forum and nonresidents' claims against a drug

21

In reaching our result, we do not mechanically apply *Walden*'s directive to distinguish a defendant's contacts "with the forum State itself" from his contacts "with persons who reside there." (*Walden*, *supra*, 571 U.S. at p. 285.) As *Walden* recognizes, "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff." (*Id.* at p. 286.) The problem is not that all of David's suit-related contacts to California involve Mariana—they necessarily would. *Burger King* found jurisdiction in Florida over Michigan franchisees whose sole connection to the forum revolved around contract negotiations with the Florida corporation. (*Burger King*, *supra*, 471 U.S. at pp. 479−481.) Similarly, *Calder* found jurisdiction where all of the tabloid defendants' California contacts related in one way or another to their libelous story about a California actress. (*Calder*, *supra*, 465 U.S. at pp. 788−790.) Instead, the jurisdictional roadblock is that David has too few suit-related contacts with California to base jurisdiction on the resulting "effects" felt by Mariana. (*Walden*, at p. 290 [Georgia officer's seizure of cash caused an injury not "tethered to Nevada in any meaningful

company and explained there must be "a connection between the forum and the specific claims at issue." (*Ibid.*) Because the court did not address the *strength* of a causal link required, state precedent repudiating a proximate cause requirement may remain viable. (*Snowney*, *supra*, 35 Cal.4th at pp. 1067−1068, citing *Vons*, *supra*, 14 Cal.4th at pp. 462−464; see also *Vons*, at p. 459 [rejecting claim that "*only* an injury caused by the very activity that formed the defendant's forum contacts would give rise to specific jurisdiction"].) Indeed, *International Shoe* simply defined the inquiry as whether a defendant's "obligations arise out of or are connected with the activities within the state." (*International Shoe*, *supra*, 326 U.S. at p. 319.) Later cases have stated jurisdiction is proper when injuries either arise out of *or relate to* forum activities. (*Vons*, at p. 462 [collecting cases].) For purposes of our analysis, we assume without deciding that if the relationship between David and Mariana reflected sufficient California contacts, the paternity action could theoretically satisfy the nexus requirement even if conception occurred in another state.

way," unlike *Calder*, which involved "broad publication of [a] *forum-focused* story . . . ." (italics added)].)

All three of David's interactions with Mariana in California coincided with two scheduled business trips to this state. There were other business and personal trips to this state during which he did not see Mariana. The pregnancy resulted from a later meeting in Nebraska. On these facts, David's "relationship with this state is tenuous at best, and in fact would be almost nonexistent [as related to this paternity action] had [Mariana] not chosen to reside here." (*Modlin v. Superior Court* (1986) 176 Cal.App.3d 1176, 1181 [New Yorker's visits with daughter during three trips to California in four years while attending medical conferences in this state did not support specific jurisdiction in ex-wife's child support action]; see *Walden*, *supra*, 571 U.S. at p. 290 [the harm was felt in Nevada "not because anything independently occurred there but because Nevada is where respondents chose to be"].) We cannot say that David's "suit-related conduct" creates "a substantial connection" with California, as required for specific jurisdiction. (*Walden*, at p. 284.)

We caution that jurisdiction remains a fact-specific rather than "mechanical" inquiry, turning on the "quality and nature" of a defendant's activities. (*International Shoe*, *supra*, 326 U.S. at p. 319; *Burger King*, *supra*, 471 U.S. at pp. 485−486 & fn. 29.) On the record before us, Mariana did not meet her initial burden to establish that David had the requisite minimum contacts to justify haling him before a California court. (*Vons*, *supra*, 14 Cal.4th at p. 449.) As a result, the burden never shifted to David to demonstrate that California's exercise of jurisdiction would be unreasonable. (*Ibid.*)

23

Although we reach a similar jurisdictional result as *Bartlett*, *supra*, 86 Cal.App.3d 72, we do so by applying *Walden's* reasoning to the facts before us. It is admittedly disconcerting to force Mariana to travel to Connecticut to establish paternity and seek child support when David knew all along she was a California resident and that any pregnancy would have significant effects here.[9] As Mariana points out, it is reasonable to expect that unprotected sexual intercourse might result in a child being conceived. The net effect may be to create a substantial jurisdictional barrier that will only assist fathers in shirking their responsibilities to their offspring. To this, *Walden* offers simply that due process is principally concerned with "the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." (*Walden*, *supra*, 571 U.S. at p. 284.) We feel compelled by *Walden* to grant David's petition on the record before us.[10]

---

[9] As David conceded below, Mariana could have acquired specific jurisdiction through personal service of the summons in this state. (*Burnham v. Superior Court* (1990) 495 U.S. 604, 628.) But she instead effected service through certified mail in Connecticut.

[10] Given our result, we need not address David's arguments that: (1) the 2003 pregnancy and other Mariana-related contacts were too remote to the 2017 paternity action to affect the jurisdictional inquiry; (2) as a matter of statutory interpretation the place of conception during a prior pregnancy is jurisdictionally irrelevant under section 5700.201, subdivision (c)(8); and (3) jurisdiction was unreasonable because Mariana was married, meaning another man was presumed to be the child's father (§ 7611, subd. (a)).

24

DISPOSITION

Let a writ of mandate issue directing the respondent court to vacate its order denying David's motion to quash the service of summons in Mariana's paternity and child support action and to enter a new and different order granting the motion and quashing the service of summons.  The stay issued on May 24, 2018 will be vacated when the opinion is final as to this court.  In the interests of justice, each party shall bear its own costs.

DATO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


HALLER, J.

25